UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

SCOTT BOSTWICK,

                Plaintiff,

     v.

WATERTOWN UNIFIED SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE WATERTOWN UNIFIED SCHOOL
DISTRICT, KATE LAPIN,
CASSANDRA SCHUG, IVAN
THOMPSON, DOUGLAS KEISER,
ROBERT BAXTER and PAUL VANCE,

                Defendants.

Case No. 2:13-cv-01036

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 3-7 OF PLAINTIFF'S AMENDED COMPLAINT

      This is a civil action in which plaintiff Scott Bostwick has asserted various claims against defendants Watertown Unified School District ("the District"), the Board of Education of Watertown Unified School District ("the Board"), Kate Lapin, Cassandra Schug, Ivan Thompson, Douglas Keiser, Robert Baxter and Paul Vance, collectively ("defendants"), arising out of defendants' actions which ultimately resulted in Mr. Bostwick being placed on administrative leave from his position as principal of the Watertown High School on June 12, 2012 and thereafter, terminated from this position on September 27, 2012.

      In his Amended Complaint, Mr. Bostwick asserted nine claims: (1) breach of contract against the District; (2) tortious interference with contract against all defendants except the District; (3) conspiracy against all of the defendants; (4) slander/libel against all defendants; (5) breach of fiduciary duty against defendant Vance; (6) intentional and negligent misrepresentation

against defendant Vance; (7) intentional infliction of emotional distress against all defendants; (8) section 1983 violation of procedural due process against defendants Schug, Thompson, and Lapin; and (9) section 1983 violation of equal protection against defendants Schug and Thompson.  Defendants have moved for dismissal of counts 3-7.

With respect to **counts 3, 4 and 7**, defendants contend that the exclusivity provision in Wisconsin's Worker's Compensation Act ("WCA"), Wis. Stat. § 102.03(2), bars Mr. Bostwick's claims.  There are several problems with this argument.  The <u>first</u> problem is that, as defendants acknowledge, the exclusivity provision applies only with respect to injuries that are incurred while the employee is "performing service growing out of and incidental to his or her employment."  Wis. Stat. § 102.03(1)(c).  As specifically noted in the Amended Complaint, Mr. Bostwick ceased performing services growing out of and incidental to his employment as of June 12, 2012, and the injuries for which he seeks compensation arose after that date.

The <u>second</u> and closely related problem with defendants' argument is that the exclusivity provision also bars only claims for injuries that were sustained while an employee was employed by the defendant.  Wis. Stat. § 102.03(1)(b).  Much of the emotional distress and reputational damage for which Mr. Bostwick seeks recovery similarly arose after the termination of his employment.  The <u>third</u> problem is that the exclusivity provision applies only to claims against employers and co-employees.  Defendants the Board, Lapin, Keiser, Baxter and Vance were neither Mr. Bostwick's employer nor his co-employees at any relevant time. The <u>fourth</u> problem is that the conspiracy claim (count 3) is not subject to the WCA's exclusivity provision to the extent it encompasses a claim for conspiracy to commit tortious interference with contract.  Conspiracy claims are subject to WCA exclusivity only to the extent the underlying wrongdoing is subject to exclusivity, and tortious interference with contract is not subject to exclusivity.

With respect to **count 5**, breach of fiduciary duty, defendants seek to have the court rule on a fact-intensive inquiry, namely the existence of a fiduciary duty, on a motion to dismiss. Whether a fiduciary duty exists is a fact-intensive inquiry that should not be determined at this stage of litigation.

Finally, with respect to **count 6**, misrepresentation, defendants argue that Mr. Bostwick has not adequately pled his claim with specificity. This argument ignores the fact that Mr. Bostwick very clearly laid out the "who, what, when, where and how" of his claim: in the summer of 2012, Mr. Vance falsely represented to Mr. Bostwick that he was conducting a thorough and good faith investigation of Mr. Bostwick's harassment complaint, and Mr. Bostwick relied on this representation in cooperating with Mr. Vance's investigation. *Am. Compl.*, ¶ 54. To the extent this allegation is insufficient, the proper remedy is to grant Mr. Bostwick leave to replead and not dismissal.

For the foregoing reasons, defendants' motion to dismiss should be denied in full.

### FACTS

The following is a summary of the facts alleged in the Complaint:

**A. Background.**

Mr. Bostwick was the Principal of Watertown High School from May 2002 until late September 2012. *Am. Compl.*, ¶ 14. During that time, the District renewed Mr. Bostwick's employment contract five times, most recently engaging him for a two year period covering the 2011-12 and 2012-13 school years ("Employment Contract"). *Id.*, ¶ 17. Under the Employment Contract, Mr. Bostwick may not be terminated during its term for reasons that are either "arbitrary or capricious." *Id.*, ¶ 18. In addition, under Wis. Stat. § 118.24(6-7), Mr. Bostwick was entitled to automatic renewal of his contract unless the District provided him with both (i)

notice of its intent to not renew and (ii) a hearing before the Board. *Id.*, ¶ 19.

During most of Mr. Bostwick's tenure with the District, defendant Keiser was its Superintendent; defendant Schug became the District's new Superintendent for the 2011-12 school year. *Id.*, ¶ 20. Early in defendant Schug's tenure as Superintendent, Mr. Bostwick heard rumors that she had plans to replace him and two other high profile senior administrators. *Id.*, ¶ 23. Accordingly, Mr. Bostwick requested a meeting to find out where he stood regarding retirement and benefit options. *Id.*, ¶ 24. On February 17, 2012, Mr. Bostwick attended that meeting with Ms. Schug and defendant Thompson, who had recently been named the District's Human Resources Director. *Id.*, ¶ 25.

### B.  Ms. Schug and Mr. Thompson Attempt to Coerce Mr. Bostwick to Quit.

Soon after the meeting began, Ms. Schug and Mr. Thompson advised Mr. Bostwick that they were investigating him for misconduct, specifically age and gender discrimination, although they would not provide any further details. *Id.*, ¶¶ 26-27. They presented him with a retirement agreement and threatened him by indicating that if he did not sign it they would keep investigating him and it would likely result in his termination. *Id.* Mr. Bostwick denied any misconduct and refused to sign. *Id.*, ¶ 27. At another meeting on March 23, 2012, Ms. Schug and Mr. Thompson again tried to get Mr. Bostwick to sign an "irrevocable written notice of early retirement" and indicated that they would cease investigating him if he agreed. *Id.*, ¶ 29. Mr. Bostwick again refused, and again Ms. Schug and Mr. Thompson refused to disclose what "misconduct" they were investigating. *Id.* Mr. Bostwick then sent a letter to the Board president, defendant Lapin, detailing the harassment he was suffering at the hands of Ms. Schug and Mr. Thompson. *Id.*, ¶ 50. Lapin directed the letter to Schug and Thompson to address. *Id.*

4

### C. Mr. Bostwick Is Put on Administrative Leave on June 12, 2012.

On June 12, 2012, Ms. Schug gave Mr. Bostwick a 27-page document entitled "Findings of Fact & Conclusions" ("the Findings") alleging 42 supposed acts of misconduct. *Id.*, ¶ 32. She then placed Bostwick on administrative leave, banned him from District property and forbade him from communicating with staff or the Board. *Id*. Ms. Schug and Mr. Thompson then continued revising their Findings against Bostwick for months after presenting them on June 12, 2012, conducting more interviews and adding allegations. *Id.*, ¶ 36.

During this investigation, Mr. Keiser, who during his tenure as superintendent had never indicated dissatisfaction with Bostwick's performance, *Id.*, ¶¶ 42, 47, provided a false and misleading account of Bostwick's employment record. *Id.*, ¶ 48. Defendant Baxter, who had been the District's Human Resources Manager prior to Mr. Thompson, knew of Mr. Bostwick's clean record, and also no longer worked for the District, also provided a false and misleading account of Bostwick's employment record to Ms. Schug and Mr. Thompson. *Id.*, ¶¶ 28, 43-48.

On June 14, 2012, Mr. Bostwick sent Ms. Lapin and the Board a letter indicating that he wanted his prior allegations of harassment treated as a formal complaint. *Id.*, ¶ 51. Pursuant to Board Policy #4110.1, the Board was obligated to (i) investigate this age discrimination complaint promptly and (ii) to hold a hearing within 30 days if the complainant (*i.e.*, Mr. Bostwick) was not satisfied with the Board's preliminary response. *Id*. The Board neither initiated a prompt investigation nor provided Mr. Bostwick with a Board hearing related to this complaint. *Id.*, ¶¶ 52-58.

### D. Defendant Vance Conspires to Have Mr. Bostwick's Harassment Complaint Dismissed.

Over thirty days after Mr. Bostwick filed his complaint, defendant Lapin hired a third-party, defendant Vance, to supposedly investigate Mr. Bostwick's claims. *Id.*, ¶ 52. Defendant

Vance met with Mr. Bostwick only once during his "investigation." *Id.*, ¶¶ 54-55. During this lone meeting, Vance represented to Mr. Bostwick that he was conducting a thorough and good faith investigation of Mr. Bostwick's harassment complaint, and Mr. Bostwick relied on such representations in cooperating with him. *Id*. This representation was false: Mr. Vance did not conduct a meaningful and good faith third-party investigation. *Id.*, ¶ 53. On information and belief, Ms. Lapin coordinated and conspired with defendants Mr. Baxter and Mr. Vance to have Mr. Vance reach a pre-determined conclusion. *Id.*, ¶ 52.

On August 23, 2012, the District produced its fourth and final version of the Findings along with Ms. Schug's recommendation that the Board fire Mr. Bostwick. *Id.*, ¶ 40. In the first half of September 2012, Mr. Vance led Mr. Bostwick to believe that his investigation was ongoing and that he would not complete it without further communicating with Mr. Bostwick. *Id.*, ¶ 55. However, Mr. Vance had already completed his investigation and on September 12, 2013, he held an *ex parte* meeting with the Board to present his findings. *Id.*, ¶ 56. On information and belief, the defendants (or some of them) conspired and arranged for Mr. Vance to report his "findings" in a closed door session on September 12, 2012 in order to affect and manipulate the results of Mr. Bostwick's termination hearing, which was scheduled to occur less than two weeks later. *Id.*, ¶ 58.

Mr. Vance purported to have concluded that the investigation against Mr. Bostwick was justified and conducted properly, and that Ms. Schug and Mr. Thompson had not harassed Mr. Bostwick. *Id.*, ¶ 56. He also purported to find that certain of the 42 alleged acts of misconduct were meritorious and credible. *Id.*, ¶ 57. In doing so, he repeated and published statements that Bostwick contends are false and defamatory. *Id*. On the basis of Mr. Vance's report, the Board rejected Mr. Bostwick's complaint and found that Ms. Schug and Mr. Thompson actions were

justified. *Id*.

### E. The Board Dismisses Mr. Bostwick's Complaint and Terminates His Employment.

On September 25-26, 2012, the Board conducted a hearing on Ms. Schug's recommendation to fire Bostwick without telling him in advance which of the 42 charges he would need to defend himself against and without providing sufficient time to present a defense to all of them. *Id*., ¶ 59. The Board voted to terminate Mr. Bostwick and issued a determination on October 11, 2012 finding Mr. Bostwick guilty of only 10 of the 42 charges. *Id*., ¶ 60.

## ARGUMENT

### I. COUNTS 3, 4 and 7 ARE NOT SUBJECT TO DISMISSAL UNDER WIS. STAT. § 102.03(2).

#### A. Mr. Bostwick Incurred Damages After He Was Placed on Administrative Leave on June 12, 2012.

Defendants contend that this court should dismiss counts 3, 4 and 7 pursuant to the exclusivity provision of the WCA, Wis. Stat. § 102.03(2). Section 102.03(2) provides in relevant part that "*where such conditions exist* [the conditions set forth in section 102.03(1)] the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer, and the worker's compensation insurance carrier." Section 102.03(1) in turn sets forth a number of conditions that must exist in order for the employee to be entitled to worker's compensation benefits for the injuries he or she has sustained. Accordingly, worker's compensation is an exclusive remedy only where an employee is actually entitled to a remedy under the act for the injury he or she claims. Wis. Stat. § 102.03.

Two of the conditions laid out in Wis. Stat. § 102.03(1) are not met here. Wis. Stat. § 102.03(1) provides in relevant part that "[l]iability under this chapter shall exist against an employer only where the following conditions concur: (a) [w]here the employee sustains an

7

injury[;] (b) where, at the time of the injury, both the employer and the employee are subject to the provisions of this chapter[;] [and] (c) [w]here are the time of the injury, the employee is performing service growing out of and incidental to his or her employment."

An employee is not "performing service growing out of and incidental to his or her employment" simply because he or she is employed by the defendant. This is clear from the statutory text of section 102.03 because any other reading would render subsections (b) and (c) redundant. Instead, the phrase has long been construed to refer to "activity that is reasonably required by the terms and conditions of [the employee's] employment" *E.g., Employers Mut. Liability Ins. Co. v. Department of Industry, Labor and Human Relations*, 52 Wis. 2d 515, 521, 190 N.W.2d 907 (1971) (additional citations omitted).

As the Wisconsin Supreme Court has explained, "[t]he statutory clause 'performing service growing out of and incidental to his or her employment' is used interchangeably with the phrase 'course of employment' … [and] [a]n injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, *and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto*." *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 104-05, 559 N.W.2d 588 (1997) (emphasis added). Although an employee is considered to be engaged activity incidental to his or her employment when he or she briefly turns away from his or her duties to attend to a personal matter, a prolonged departure from those responsibilities yields the opposite result. *Id*. at 105-06.

As is clear from the pleadings, Mr. Bostwick was placed on a prolonged administrative leave starting June 12, 2012 that ran until his employment was terminated on September 27, 2012. *Am. Compl.*, ¶¶ 32, 59-60. As part of that forced leave, Mr. Bostwick was banned him

8

Case 2:13-cv-01036-RTR   Filed 10/03/13   Page 8 of 17   Document 11

from District property and forbidden from communicating with staff or the Board. *Id*. Thus, at the time of Mr. Bostwick's injuries, he was not, and could not have been, "performing service growing out of and incidental to [his] employment" as required in Wis. Stat. § 102.03(1)(c).[1] Mr. Bostwick was at all times after June 12, 2012 engaging in conduct exclusively for his own benefit and not as an extension of his responsibilities as principal of the Watertown High School. *See Kosteczko v. Industrial Commission,* 265 Wis. 29, 30-31, 60 N.W.2d 355, 356 (1953) (no worker's compensation "where an employee is injured in the performance of an act in furtherance of his own purposes and without the scope of his employment"). Accordingly, Mr. Bostwick's claims are not subject to the worker's compensation exclusivity provision under Wis. Stat. § 102.03(2).

    **B.    Mr. Bostwick Suffered Damages After and As a Result of His Termination on September 27, 2012.**

Even if this court were to disagree and find that Mr. Bostwick continued to perform services after he was placed on administrative leave, it is well-settled that claims for post-termination injuries are not subject to the worker's compensation exclusivity provision. *See* Wis. Stat. §§ 102.03(1)(b), 102.03(2); *Anderson v. Hebert*, 2011 WI App 56, ¶ 10, 332 Wis. 2d 432, 798 N.W.2d 275 ("at the time of the injury, Anderson was not the County's employee and was not subject to the provisions of the Act . . . [f]urthermore, because he had already resigned, Anderson was not 'performing service growing out of and incidental to his ... employment' at the

---

[1] The cases defendants cite on this point in fact strongly support plaintiff's position that an employee must be actively working at the time of the injury for exclusivity to apply. In *Jensen v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 468 N.W.2d 1, 8 (1991), a Village's clerk-treasurer brought action against the village president to recover for intentional infliction of emotional distress that was allegedly inflicted before, during and after Village board meetings. The Court's conclusion that the injury was inflicted while the clerk-treasurer was performing service growing out of her employment hinged on the fact that it was part of the plaintiff's job responsibilities, as the Village clerk-treasurer, to attend the board meetings. *Id*. at 270-71. Likewise, in *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 559 N.W.2d 558 (1997), plaintiff's alleged injury took place while answering a call in the middle of a work shift. Neither case remotely involves a scenario like the one here where an employee incurred injuries while on suspension and during a period of time where he was actually forbidden from performing services.

time of the injury"). Much of the emotional distress and nearly all of the reputational damage Mr. Bostwick suffered occurred after and as a result of his termination.[2] *See Am. Compl.* ¶¶ 62, 98.

In similar line of cases, courts applying Wisconsin law have held that harm resulting from termination or layoff does not meet the definition of "injury," as that term is defined for purposes of Wis. Stat. § 102.03, and as a result, claims seeking recovery for such harm are not subject to the worker's compensation exclusivity provision. *County of La Crosse v. Wisconsin Employment Relations Com'n*, 182 Wis. 2d 15, 34, 513 N.W.2d 579 (1994); *see also Brown v. Pick 'N Save Food Stores*, 138 F. Supp. 2d 1133, 1139 (E.D. Wis. 2001) (harm arising from wrongful termination is not an "injury" under worker's compensation act). The term "injury" is defined, for purposes of Wis. Stat. § 102.03, as "mental or physical harm to an employee caused by accident or disease." Wis. Stat. § 102.01(2)(c). This definition, the Wisconsin Supreme Court has reasoned, does not encompass damages associated with the termination of employment. *County of La Crosse*, 182 Wis. 2d at 34; *see also Brown*, 138 F. Supp. 2d at 1139; *Wolf v. F & M Banks*, 193 Wis. 2d 439, 457, 534 N.W.2d 877, 884 (Ct. App. 1995) (pecuniary loss of benefits under employment contract and causally related consequential losses are not "injuries" subject to worker's compensation act). Because the injuries for which Mr. Bostwick seeks recovery in this case include damages deriving from the termination of his employment, *see, e.g.*, *Am. Compl.*, ¶ 62., the worker's compensation exclusivity bar does not apply. *Id*.

### C. Defendants Lapin, Keiser, Baxter, Vance and the Board Are Neither Employers Nor Co-Employees under the Act.

In addition to the two foregoing reasons for rejecting defendants' argument that counts 3,

---

[2] Failing to appreciate this temporal distinction, Defendants declare that Mr. Bostwick was performing services "growing out of and incidental to his employment with the District" at the time of injury because the "campaign of harassment" alleged by Mr. Bostwick in his Amended Complaint occurred during the time he was employed as principal for the District. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 5, Sept. 12, 2013).

4 and 7 should be dismissed under the WCA exclusivity provision, the third problem with their argument is that the exclusivity provision applies only to claims against employers and co-employees. Wis. Stat. § 102.03(2) ("the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer, and the worker's compensation insurance carrier"). Defendants Lapin, Keiser, Baxter, Vance and the Board were neither Mr. Bostwick's employer nor were they his co-workers at the time of the events giving rise to his claims.

Mr. Bostwick was an employee of the District. *Am. Compl.*, ¶ 15. Although closely aligned, a school district and its board of education are distinct legal entities. *See Flood v. Board of Education*, 69 Wis. 2d 184, 193, 230 N.W.2d 711 (1975) ("While there may be cases where the interests of the board of education may be different than that of the school district, and in such case the school district would not be bound by a judgment brought only against the board of education…"). As such, the Board was neither Mr. Bostwick's employer nor his co-employee. Similarly, because Mr. Bostwick was an employee of the District and defendant Lapin was an employee of the Board, *see Am. Compl.*, ¶ 5, and defendant Vance was an independent contractor of the Board, *Id.*, ¶ 52, the exclusivity provision does not apply to Mr. Bostwick's claims against either Ms. Lapin or Mr. Vance as they are not "other employee[s] of the same employer." Wis. Stat. § 102.03(2). Defendants Keiser and Baxter too do not qualify as Mr. Bostwick's co-employees. Although both had previously been employed by the District, neither was an employee of the District at the time of the events giving rise to Mr. Bostwick's claims. As such, the exclusivity provision does not apply to Mr. Bostwick's claims against them either. *See* Wis. Stat. § 102.03(2).

11
Case 2:13-cv-01036-RTR   Filed 10/03/13   Page 11 of 17   Document 11

## D. Bostwick's Conspiracy Claim Is Not Subject to Dismissal Under the WCA Exclusivity Provision Because It Includes Conspiracy To Commit Tortious Interference With Contract.

"A 'conspiracy' is a combination of two or more persons acting together to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. The essence of a conspiracy is a combination or agreement to violate or disregard the law." Wis JI-Civil 2800. "The 'unlawful' act need not be a criminal act because any willful, actionable violation of a civil right is sufficient." *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 447-48, 557 N.W.2d 835 (1996). "To state a cause of action for civil conspiracy, the complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 701 N.W.2d 523 (citing *Onderdonk v. Lamb,* 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977)). "It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).

Mr. Bostwick's Amended Complaint clearly lays out several wrongful acts committed by defendants, namely each of the other specific torts alleged, which include a claim for tortious interference with contract. *See Am. Compl.*, ¶¶ 67-72. In Count 2, tortious interference with contract, Mr. Bostwick alleges that each of the named defendants, excluding the District itself, individually tortuously interfered with Mr. Bostwick's contract with the District; Count 3 alleges that they conspired with one another to, among other things, tortuously interfere with his contract. *Id.,* ¶¶ 67-77. Defendants, in turn, assert that Plaintiff's civil conspiracy claim is both

barred by WCA exclusivity and redundant pursuant to Fed. R. Civ. P. 12(f). (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 10-11, ECF No. 5, Sept. 12, 2013.)

Whether a conspiracy claim is barred under the WCA exclusivity provision turns on whether the underlying wrongful conduct is subject to the exclusivity bar. *See Mudrovich v. Soto*, 2000 WI App 174, ¶¶ 8-13, 238 Wis. 2d 162, 617 N.W.2d 242 (conspiracy claim premised on wrongful act of defamation under Wis. Stat. § 134.01 subject to exclusivity rule). The underlying wrongful act of tortious interference with contract is not subject to the exclusivity bar and accordingly, a claim for civil conspiracy to commit tortious interference with contract is likewise not barred. *Wolf*, 193 Wis. 2d at 457 (tortious interference with contract claims not barred by worker's compensation exclusivity provision; pecuniary loss of benefits of the contract and causally-related consequential losses are not mental or physical injury and thus, not an "injury" under act). As such, in addition to all the foregoing reasons, count 3 is not subject to dismissal under the worker's compensation act to the extent it is premised on the underlying wrongful conduct of tortious interference with contract.

Moreover, Defendants assert that Bostwick's civil conspiracy claim is redundant with his tortious interference with contract claims against Defendants. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 11, ECF No. 5, Sept. 12, 2013.) Wisconsin law holds otherwise. Frequently plead in tandem, (i) tortious interference with contract and (ii) an action for damages for civil conspiracy pursuant to Wis. Stat. § 134.01 are discrete claims with distinct elements. *See, e.g., Infocorp, LLC v. Hunt*, 2010 WI App 3, 323 Wis. 2d 45, 780 N.W.2d 178; *Girl Scouts of Manitou Council v. GSUSA*, 700 F. Supp. 2d 1055 (E.D. Wis. 2010). Consequently, Plaintiff's unilateral (and legally unsupported) assertion that Mr. Bostwick's action for damages for civil conspiracy is redundant should not be countenanced.

## II. COUNT 5 (BREACH OF FIDUCIARY DUTY) IS NOT SUBJECT TO DISMISSAL BECAUSE MR. BOSTWICK HAS CLEARLY ALLEGED A BREACH OF FIDUCIARY CLAIM AGAINST DEFENDANT VANCE.

Defendants have moved to dismiss count 5, breach of fiduciary duty against defendant Vance, arguing that the factual allegations in the Complaint do not indicate that Mr. Vance was loyal to Mr. Bostwick and then, reasoning backwards to conclude that no fiduciary duty existed because of the lack of loyalty. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 11-13, ECF No. 5, Sept. 12, 2013.) In making this argument, Defendants cite to allegations showing that Mr. Vance *breached* his fiduciary duty by *failing* to be impartial. *Id*. (citing *Am. Compl.*, ¶ 52-58).

The existence of a fiduciary duty does not turn on whether the defendant actually was loyal to the plaintiff; breach of fiduciary duty claims would cease to exist if this were the case. Instead, the existence of a fiduciary duty arises from the nature of the relationship between two parties. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 55, 284 Wis. 2d 307, 700 N.W.2d 180 ("'A fiduciary relationship arises from a formal commitment to act for the benefit of another ... or from special circumstances from which the law will assume an obligation to act for another's benefit.'") (quoting *Merrill Lynch v. Boeck,* 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985)). "In determining whether a fiduciary relationship has arisen, courts consider a variety of factors, including whether there is dependence and inequality based on weakness of age or mental strength, lack of business intelligence, inferior knowledge of facts involved, or other conditions giving one side an advantage over the other." *Id*. (citing *Prod. Credit Ass'n of Lancaster v. Croft,* 143 Wis. 2d 746, 755-56, 423 N.W.2d 544 (Ct. App. 1988)).

Because the existence of a fiduciary duty is a fact intensive inquiry, *id.*, it is generally not properly decided on the motion to dismiss. *See Jenkins v. Sabourin*, 104 Wis. 2d 309, 313, 311 N.W.2d 600 (1981) (complaint is to be construed liberally in favor of a conclusion that a claim

has been stated if such a conclusion is reasonably possible); *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978) (motion to dismiss will be granted "only when it is quite clear that under no conditions can the plaintiff recover").

Defendants' argument that defendant Vance did not owe Mr. Bostwick a fiduciary duty seems to be premised on an assumption that fiduciary duties exist only in situations where a party is obligated to place the interests of one party over all others, including his or her own. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss 12, ECF No. 5, Sept. 12, 2013.) This is not the case. A fiduciary duty may arise when a party is charged with being a third-party neutral; in such a situation, the fiduciary duty includes an obligation to remain neutral. *See, e.g.*, *Black v. Metro Title, Inc.*, 2006 WI App 52, ¶ 10, 290 Wis. 2d 213, 712 N.W.2d 395 ("An escrow agent acts as a neutral third party[;] [t]he escrow agent owes a fiduciary duty to both parties of the escrow contract.") (additional citations omitted); *In re Knichel*, 347 S.W.3d 127, 129 (Mo. App. E.D. 2011) (co-trustee owed fiduciary duty of neutrality); *In re Appeal of Sheafer*, 116 Ohio App. 3d 98, 110, 686 N.W.2d 1382 (1996) ("Brokers who have been entrusted with earnest money have a fiduciary duty to remain the neutral agent of both parties even though the broker may also be the agent of one of the parties in the underlying transaction").

### III. COUNT 6 (MISREPRESENTATION) IS NOT SUBJECT TO DISMISSAL BECAUSE MR. BOSTWICK HAS IDENTIFIED THE STATEMENT HE CONTENDS TO BE A MISREPRESENTATION WITH SPECIFICITY.

Finally, with respect to count 6, misrepresentation, defendants argue that Mr. Bostwick has not adequately pled his claim with particularity pursuant to Fed. R. Civ. P. 9(b). (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 13-15, ECF No. 5, Sept. 12, 2013.) This argument ignores the fact that Mr. Bostwick very clearly laid out the "who, what, when, where and how" of his claim: in the summer of 2012, Mr. Vance falsely represented to Mr. Bostwick that he was

conducting a thorough and good faith investigation of Mr. Bostwick's harassment complaint and Mr. Bostwick relied on this representation in cooperating with Mr. Vance's investigation. *Am. Compl.*, ¶ 54; *see Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) ("Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail.").

Indeed, Defendants quote in their brief Mr. Bostwick's express allegations that "Mr. Vance 'represented to plaintiff that he would conduct an unbiased and fair investigation that was not predetermined and would thoroughly investigate Bostwick's allegations' … [and] that Mr. Vance 'represented to Bostwick that he was conducting a thorough investigation of his harassment complaint.'" (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 13-14, ECF No. 5, Sept. 12, 2013) (quoting *Am. Compl.*, ¶¶ 54, 91).

Yet, despite having quoted these precise allegations, defendants argue that Bostwick has plead "legal conclusions, not actual statements allegedly made by real people." *Id.* at 12. It is unclear how much more specific plaintiff could have been; in the event defendants are truly confused, the specific statements are those which defendants' specifically quoted in their brief, *i.e.*, the specific statements laid out in paragraphs 54 and 91 of the Amended Complaint. The Amended Complaint lays out a specific statement (those quoted above), made by a particular individual (defendant Vance), during a narrow and particular time frame (the summer of 2012 and during the course of Mr. Vance's investigation which began in mid-July) and to another specific individual (Mr. Bostwick). *Am. Compl.*, ¶¶ 54, 91; *see also Rolo v. City Inv. Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998) (plaintiff not required to "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision

and some measure of substantiation into their allegations").

Not only do the allegations meet Fed. R. Civ. P. 9(b)'s particularity requirement, they also more than sufficiently fulfill its two underlying purposes: they provide the defendant adequate notice of the claim made against him and they protect against generic claims asserted with the hope that relevant information would turn up to support them during litigation. *See Harrison, U.S. v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999) ("A court should hesitate to dismiss a complaint under [the particularity requirement] if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.").

Even if the pleadings were not sufficiently specific, Mr. Bostwick should be allowed to attempt to replead them; dismissal for failure to allege fraud with particularity is proper only after the plaintiff has been given multiple opportunities, and has failed repeatedly, to meet the particularity requirements. *E.g.*, *Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985).

## CONCLUSION

On the grounds set forth above, Plaintiff Scott Bostwick respectfully requests that this court deny defendants' motion to dismiss in its entirety.

Dated at Milwaukee, Wisconsin, this 3rd day of October, 2013.

BY<u>/s/ David J. Sisson</u>

    David J. Sisson
    WI State Bar ID No. 1017422
    Reinhart Boerner Van Deuren, s.c.
    1000 North Water Street, Suite 1700
    Milwaukee, WI 53202
    414-298-1000
    Attorney for Plaintiff Scott Bostwick