# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCOTT BOSTWICK,

              Plaintiff,

        -vs-                        **Case No. 13-C-1036**

WATERTOWN UNIFIED SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE WATERTOWN
UNIFIED SCHOOL DISTRICT, KATE LAPIN,
CASSANDRA SCHUG, IVAN THOMPSON,
DOUGLAS KEISER, ROBERT BAXTER,
and PAUL VANCE,

              Defendants.

## DECISION AND ORDER

After ten years as the principal of Watertown High School, Scott Bostwick was placed on administrative leave and eventually fired pursuant to what he claims was a trumped-up investigation designed to drive him into resignation or retirement. The defendants removed from state court, and now they move to dismiss portions of Bostwick's nine-count complaint. As discussed below, the defendants' motion is directed towards claims that arise under state law. The Court may exercise jurisdiction over these claims because they are supplemental to Bostwick's federal claims. 28 U.S.C. § 1367(a). The Court accepts the following, well-pleaded allegations in the complaint as true for purposes of this Rule 12(b)(6) motion. *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir. 2008).

Bostwick was the principal of Watertown High School from May 2002 until

late September 2012. The Watertown Unified School District renewed Bostwick's contract five times. The most recent contract covered the 2011-12 and 2012-13 school years. During most of Bostwick's tenure, Douglas Keiser was Superintendent and Bostwick's immediate supervisor. Cassandra Schug became the District's new Superintendent for the 2011-12 school year.

Early in Schug's tenure as Superintendent, Bostwick heard rumors that she had plans to replace him and two other high profile senior administrators. Bostwick approached Schug about the matter and she assured him that she had no desire to replace him. Bostwick had reason to doubt the sincerity of Schug's assurances, so he requested a meeting to find out where he stood regarding retirement and benefit options. On February 17, 2012, Bostwick attended that meeting with Schug and Ivan Thompson, the District's recently-named Human Resources Director. Soon after the meeting began, Schug and Thompson advised Bostwick that they were investigating him for alleged age and sex discrimination against older female staff members. Schug and Thompson presented Bostwick with a retirement agreement and threatened him by indicating that if he did not sign it they would keep investigating, which would likely result in his termination. Bostwick denied engaging in any misconduct. Although Thompson told Bostwick it looked like he was guilty of the charges, Thompson and Schug refused to tell Bostwick what he was accused of doing. Bostwick later learned that a secret investigation against him had begun late in 2011.

For several months, Schug and Thompson continued refusing Bostwick's

requests for information regarding the allegations against him. Schug and Thompson then expanded their investigation, and on June 12, 2012, they presented Bostwick with a 27-page document entitled "Findings of Fact & Conclusions," detailing 42 things which Bostwick had allegedly done wrong over the course of his tenure at Watertown. None of these issues were registered as formal complaints, and most of them had never been brought to the attention of Bostwick or anyone in administration or human resources. Thirty-two of the 42 issues had nothing to do with age or sex discrimination.

Bostwick was then placed on administrative leave and banned from District property. Over the rest of the summer, Schug and Thompson continued revising their findings, conducting more interviews and adding allegations. For months during the summer of 2012, Bostwick tried to respond to the charges against him. Among other things, Bostwick met with Schug and Thompson for more than 10 hours over several days. Bostwick was not required to participate in these meetings. Rather, the District agreed to meet with him to get his side of the story in person only after multiple requests by Bostwick. Prior to that time, the District indicated that it was going to proceed with a final investigation report without his personal input. The District produced its last version of the findings on August 23, 2012, along with Schug's recommendation that the Board of Education of the Watertown Unified School District fire Bostwick. The Board scheduled a hearing for September 25-26, 2012.

Prior to receiving the first copy of the findings in June 2012, Bostwick sent a

- 3 -

letter directly to the Board, through its President Kate Lapin, detailing the harassment he was suffering at the hands of Schug and Thompson in connection with the investigation. On June 14, 2012, Bostwick followed-up with another letter directed to the Board which he identified as a "formal complaint" of harassment. Bostwick asserted that he was being harassed on the basis of his age by attempts to force him into retirement. Instead of conducting a hearing within thirty days, as required by Board policy, Lapin engaged Paul Vance to conduct a third-party investigation. In the course of his investigation, Vance communicated with Bostwick only once. Bostwick attempted to provide additional information to support his allegations of harassment. However, Vance ignored multiple attempts by Bostwick to communicate in the first half of September 2012. After promising that he would be willing to consider additional evidence, Vance simply stopped communicating with Bostwick's counsel. Vance reported his findings to Schug, Thompson, Lapin, and the Board in a closed door session on September 12, 2012, concluding that the investigation against Bostwick was completely justified, and that some or all of the 42 complaints against him were meritorious and credible. After the September 25-26 hearing, the Board voted to terminate Bostwick.

In their motion, the defendants argue that Bostwick's claims for intentional infliction of emotional distress (count VII), slander/libel (count IV), and civil conspiracy (count III) are barred by the exclusive remedy provision of Wisconsin's Worker's Compensation Act, Wis. Stat. § 102.03(2). As relevant here, an employer's

- 4 -

obligation to pay worker's compensation arises when, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment, and the accident or disease causing injury arises out of the employment. § 102.03(1). Bostwick does not dispute that his injuries arose out of his employment. Instead, Bostwick argues that the Act does not apply because he was injured while he was away from work on administrative leave; in other words, he was not "performing service growing out of and incidental to his . . . employment" at the time he was injured by the defendants' conduct. § 102.03(1)(c)1. This language — growing out of and incidental to employment — is used interchangeably with the phrase "course of employment." *Weiss v. City of Milwaukee*, 559 N.W.2d 588, 592 (Wis. 1997). Both formulations refer to the "time, place, and circumstances" under which the injury occurred. *Id.* An injury arises in the course of employment when it takes place within the period of the employment at a place where the employee reasonably may be, and while he or she is fulfilling his or her duties or engaged in doing something thereto. *Id.* (citing Professor Larson's treatise on workers' compensation law).

Wisconsin courts have held that claims for intentional infliction of emotional distress, defamation, and conspiracy are barred by the Act. *See, e.g., Jenson v. Empl. Mut. Cas. Co.*, 468 N.W.2d 1 (Wis. 1991) (IIED); *Farady-Sultze v. Aurora Med. Ctr. of Oshkosh, Inc.*, 787 N.W.2d 433 (Wis. Ct. App. 2010) (IIED and defamation); *Wolf v. F&M Banks*, 534 N.W.2d 877 (Wis. Ct. App. 1995) (defamation); *Becker v. Automatic Garage Door Co.*, 456 N.W.2d 888 (Wis. Ct. App. 1990) (defamation);

- 5 -

*Mudrovich v. Soto*, 617 N.W.2d 242 (Wis. Ct. App. 2000) (civil conspiracy). However, these cases either assumed or specifically held that the injury occurred while the plaintiff was acting in the course of employment. In *Jenson*, the Wisconsin Supreme Court held that a claim by a village clerk against the village board president for intentional infliction of emotional distress was barred by the WCA, but only because the attacks took place at village board meetings and in the confines of the village hall. Thus, the "undisputed facts" led "overwhelmingly to the conclusion" that the clerk was performing services "growing out of and incidental to . . . her employment" at the time of injury. *Id.* at 8. In *Farady-Sultze*, *Wolf*, and *Becker*, the course of employment requirement was simply not discussed, as the courts seemed to assume that the injuries occurred while the employee was performing service growing out of and incidental to his employment. In *Mudrovich*, the court of appeals held that the course of employment factor was satisfied *because* the alleged injury arose out the plaintiff's employment. 617 N.W.2d at 246 ("Because the remarks resulting in Mudrovich's claimed injury arose out of his employment, we conclude that Mudrovich was performing services growing out of and incidental to his employment at the time of the injury"). This syllogism makes sense in most cases where the employee is injured at work, but it does not always follow that an injury caused by the employment relationship occurs while the employee is acting in the course of employment.

The defendants argue that all of Bostwick's injuries occurred in the course of employment because he was injured while he was still employed by the district; and

- 6 -

even while he was on administrative leave, Bostwick continued to attend meetings and participate in the investigative process. However, it is difficult to pinpoint the exact timing of many of the alleged injuries, and since Bostwick was on administrative leave for an extended period of time, it is even more difficult to draw the connection that the injuries occurred at a point in time when Bostwick was performing service growing out of and incidental to his employment. This result may seem anomalous in light of the obvious work-connection of Bostwick's injuries, but Wisconsin courts have not adopted Professor Larson's "quantum theory" of work connection, under which the weakness of the course of employment factor can be made up by the strength of the arising out of employment factor. *N. Assur. Co. of Am. V. LIRC*, 455 N.W.2d 915 (Wis. Ct. App. March 1, 1990) (Unpublished opinion). Other jurisdictions view the two concepts "as a whole to define the injury-employment connection," *Calovecchi v. State of Michigan*, 611 N.W.2d 300, 303 (Mich. 2000), but the Court is obliged to follow Wisconsin law, so the course of employment requirement cannot be ignored. *Roe v. City of Milwaukee*, 26 F. Supp. 2d 1119, 1123 (E.D. Wis. 1998) (a "federal court's task in exercising supplemental jurisdiction over state claims is to mirror or predict, on the basis of existing state precedent, if any, how a state court would rule on such claims"). Construing Bostwick's allegations in the light most favorable to him, the Court is unable to conclude that any or all of his injuries coincided with a time during which he was acting in the course of employment.

    In the alternative, the defendants argue that the conspiracy claim should be

stricken to the extent that it is premised on Bostwick's separate claim for tortious interference with contract (count II) because Bostwick cannot recover twice for the same injury. Fed. R. Civ. P. 12(f). Litigants are allowed to plead in the alternative, Fed. R. Civ. P. 8, so the Court will not strike the claim. "To the extent that [plaintiff] will not be able to prevail under both theories of recovery, it need not embrace one over the other at this earlier stage of the proceedings. Double recovery is not threatened in the pleadings stage . . . ." *River West Meeting Assoc., Inc. v. Avaya, Inc.*, No. 03 C 1023, 2004 WL 422683, at *3 (N.D. Ill. March 4, 2004).

Finally, Paul Vance moves to dismiss the claims directed solely at him: breach of fiduciary duty (count V) and misrepresentation (count VI). Vance argues that there can be no fiduciary relationship in the absence of a duty to act solely on behalf of one person above all others. This is wrong. A fiduciary duty can arise when a party assumes an obligation to act as a third-party neutral. *See, e.g., Black v. Metro Title, Inc.*, 712 N.W.2d 395, 398 (Wis. Ct. App. 2006) ("An escrow agent acts as a neutral third party. The escrow agent owes a fiduciary duty to both parties of the escrow contract"); *In re Appeal of Sheaffer*, 686 N.E.2d 1382, 1390 (Ohio Ct. App. 1996) ("Brokers who have been entrusted with earnest money have a fiduciary duty to remain the neutral agent of both parties even though the broker may also be the agent of one of the parties in the underlying transaction"); *Matter of Estate of Shano*, 869 P. 2d 1203, 1208-09 (Ariz. Ct. App. 1993) (attorney for personal representative of estate has derivative fiduciary duty of neutrality and impartiality to successors of decedent's

- 8 -

estate).  Bostwick's allegations plausibly establish the existence of a fiduciary duty. *Doe v. Archdiocese of Milwaukee*, 700 N.W.2d 180, 194 (Wis. 2005) ("A fiduciary relationship arises from a formal commitment to act for the benefit of another . . ."). The Court also rejects Vance's argument that Bostwick failed to plead enough facts in support of his misrepresentation claim, to wit, that in the summer of 2012, Vance falsely represented to Bostwick that he was conducting a thorough and good faith investigation of Bostwick's harassment complaint and that Bostwick relied on this representation in cooperating with Vance's investigation.  This is more than enough to meet the requirements of Rule 9.  *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) ("Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1.  The defendants' motion to dismiss [ECF No. 4] is **DENIED**;

2.  Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **February 4, 2014** at **10:00 a.m.** (Central Time).  Please be available at that time.  The Court will initiate the call.

3.  The purpose of the conference call is to establish a scheduling order which will limit the time: (a) to join other parties and to amend the pleadings; (b) to

- 9 -

file motions; (c) to complete discovery;

4.     The scheduling order may also: (a) modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; (b) provide for the disclosure or discovery of electronically stored information; (c) include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced; (d) the date or dates for conferences before trial, a final pretrial conference, and trial; and (e) any other matters appropriate in the circumstances of the case;

5.     The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent.  Fed. R. Civ. P. 16(b)(4);

6.     The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1).  Please refer to Attachment A.  Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above.  The Rule 26(f) conference may be conducted by telephone.  Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (a) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (b) make the required initial disclosures under Rule 26(a) regarding witnesses and documents.  In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case;

- 10 -

7.    The written report must include the telephone numbers where the parties can be reached for this call.

8.    In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the <u>Principles Relating to the Discovery of Electronically Stored Information</u>.  Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference.  Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information.  At the initial status conference, counsel must be prepared  to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI.  After discussing the matter with counsel, the Court will determine whether to enter the <u>Standing Order Relating to the Discovery of Electronically Stored Information</u> in their particular case.  (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 4th day of December, 2013.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

- 11 -

**Civil L. R. 16. Pretrial Conferences; Scheduling; Management; Alternative Dispute Resolution.**

    **(a) Preliminary Pretrial Conferences.**

        **(1)**    A judge may require the parties to appear to consider the future conduct of the case. The parties must be prepared to discuss the matters enumerated in Fed. R. Civ. P. 16 and Fed. R. Civ. P. 26(f). The parties also should be prepared to state:

            **(A)**    the nature of the case in 1 or 2 sentences;

            **(B)**    any contemplated motions;

            **(C)**    the parties' discovery plan, including the amount of further discovery each party contemplates, the approximate time for completion of discovery, and any disputes regarding discovery;

            **(D)**    whether the parties anticipate the disclosure or discovery of electronically stored information;

            **(E)**    whether the parties have reached an agreement for asserting post-production claims of privilege or of protection as trial-preparation material, and whether the parties request the judge to enter an order including the agreement;

            **(F)**    whether settlement discussions have occurred;

            **(G)**    the basis for the Court's subject matter jurisdiction; and

            **(H)**    such other matters as may affect further scheduling of the case for final disposition.

Attachment A

## CONSIDERATION OF ISSUES CONCERNING
## ELECTRONICALLY STORED INFORMATION ("ESI")

Experience teaches that unless conducted with careful planning and a spirit of cooperation, discovery of ESI can result in an unnecessarily high level of conflict, expense and delay in resolving cases on the merits. That is why the Court has endorsed The Sedona Conference® Cooperation Proclamation dated July 2008.

To further advance the goal of having parties conduct discovery of ESI in a cooperative and cost-effective manner, this Court has adopted the Standing Order Relating to the Discovery of Electronically Stored Information. At the Rule 26(f) planning conference, the parties shall address the issues discussed in the Standing Order, including but not limited to those set forth in Section 2.01(a)(1)-(5). In the report of the planning conference, the parties shall set forth:

(a) Whether they anticipate discovery of ESI in the case;

(b) What agreements they have reached regarding discovery of ESI; and

(c) What areas of disagreement they have with regard to discovery of ESI.

After reviewing the report of the planning conference and discussing the matter with the parties, the Court will determine whether the Standing Order should apply in this case.

Attachment B

_____,

                    Plaintiff,

          vs.                                    Case No. _____

_____,

                    Defendant.

 

          This Court is participating in the Pilot Program initiated by the Seventh Circuit Electronic Discovery Committee.  Parties and counsel in the Pilot Program with civil cases pending in this Court shall familiarize themselves with, and comport themselves consistent with, that committee's Principles Relating to the Discovery of Electronically Stored Information.  For more information about the Pilot Program please see the web site of The Seventh Circuit Bar Association, www.7thcircuitbar.org.  If any party believes that there is good cause why a particular case should be exempted, in whole or in part, from the Principles Relating to the Discovery of Electronically Stored Information, then that party may raise such reason with the Court.

*General Principles*

**Principle 1.01 (Purpose)**

          The purpose of these Principles is to assist courts in the administration of Federal Rule of Civil Procedure 1, to secure the just, speedy, and inexpensive determination of every civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention. Understanding of the feasibility, reasonableness, costs, and benefits of various aspects of electronic discovery will inevitably evolve as judges, attorneys and parties to litigation gain more experience with ESI and as technology advances.

Attachment C

**Principle 1.02 (Cooperation)**

An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

**Principle 1.03 (Discovery Proportionality)**

The proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.


*Early Case Assessment Principles*

**Principle 2.01 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution)**

(a)      Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Principles to their specific case. Among the issues to be discussed are:

(1)      the identification of relevant and discoverable ESI and documents, including methods for identifying an initial subset of sources of ESI and documents that are most likely to contain the relevant and discoverable information as well as methodologies for culling the relevant and discoverable ESI and documents from that initial subset (see Principle 2.05);

(2)      the scope of discoverable ESI and documents to be preserved by the parties;

(3)      the formats for preservation and production of ESI and documents;

(4)      the potential for conducting discovery in phases or stages as a method for reducing costs and burden; and

(5)      the potential need for a protective order and any procedures to which the parties might agree for handling inadvertent production of privileged

Attachment C

information and other privilege waiver issues pursuant to Rule 502(d) or (e) of the Federal Rules of Evidence.

(b)     Disputes regarding ESI that counsel for the parties are unable to resolve shall be presented to the Court at the initial status conference, Fed. R. Civ. P. Rule 16(b) Scheduling Conference, or as soon as possible thereafter.

(c)     The attorneys for each party shall review and understand how their client's data is stored and retrieved before the meet and confer discussions in order to determine what issues must be addressed during the meet and confer discussions.

(d)     If the Court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is impeding the purpose of these Principles, the Court may require additional discussions prior to the commencement of discovery, and may impose sanctions, if appropriate.

**Principle 2.02 (E-Discovery Liaison(s))**

In most cases, the meet and confer process will be aided by participation of an e-discovery liaison(s) as defined in this Principle. In the event of a dispute concerning the preservation or production of ESI, each party shall designate an individual(s) to act as e-discovery liaison(s) for purposes of meeting, conferring, and attending court hearings on the subject. Regardless of whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

(a)     be prepared to participate in e-discovery dispute resolution;

(b)     be knowledgeable about the party's e-discovery efforts;

(c)     be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

(d)     be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**Principle 2.03 (Preservation Requests and Orders)**

(a)     Appropriate preservation requests and preservation orders further the goals of these Principles. Vague and overly broad preservation requests do not further the goals of these Principles

Attachment C

and are therefore disfavored. Vague and overly broad preservation orders should not be sought or entered. The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b)     To the extent counsel or a party requests preservation of ESI through the use of a preservation letter, such requests should attempt to ensure the preservation of relevant and discoverable information and to facilitate cooperation between requesting and receiving counsel and parties by transmitting specific and useful information. Examples of such specific and useful information include, but are not limited to:

      (1)     names of the parties;

      (2)     factual background of the potential legal claim(s) and identification of potential cause(s) of action;

      (3)     names of potential witnesses and other people reasonably anticipated to have relevant evidence;

      (4)     relevant time period; and

      (5)     other information that may assist the responding party in assessing what information to preserve.

(c)     If the recipient of a preservation request chooses to respond, that response should provide the requesting counsel or party with useful information regarding the preservation efforts undertaken by the responding party. Examples of such useful and specific information include, but are not limited to, information that:

      (1)     identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

      (2)     identifies any disagreement(s) with the request to preserve; and

      (3)     identifies any further preservation issues that were not raised.

(d)     Nothing in these Principles shall be construed as requiring the sending of a preservation request or requiring the sending of a response to such a request.

**Principle 2.04 (Scope of Preservation)**

(a)     Every party to litigation and its counsel are responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or

Attachment C

control. Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case. The parties and counsel should address preservation issues at the outset of a case, and should continue to address them as the case progresses and their understanding of the issues and the facts improves.

(b)     Discovery concerning the preservation and collection efforts of another party may be appropriate but, if used unadvisedly, can also contribute to the unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter. Accordingly, prior to initiating such discovery a party shall confer with the party from whom the information is sought concerning: (I) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information. Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c)     The parties and counsel should come to the meet and confer conference prepared to discuss the claims and defenses in the case including specific issues, time frame, potential damages, and targeted discovery that each anticipates requesting. In addition, the parties and counsel should be prepared to discuss reasonably foreseeable preservation issues that relate directly to the information that the other party is seeking. The parties and counsel need not raise every conceivable issue that  may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d)     The following categories of ESI generally are not discoverable in most cases, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

     (1)     "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

     (2)     random access memory (RAM) or other ephemeral data;

     (3)     on-line access data such as temporary internet files, history, cache, cookies, etc.;

     (4)     data in metadata fields that are frequently updated automatically, such as last-opened dates;

Attachment C

(5)       backup data that is substantially duplicative of data that is more accessible elsewhere; and

(6)       other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

(e)       If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C). If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

## Principle 2.05 (Identification of Electronically Stored Information)

(a)       At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.

(b)       Topics for discussion may include, but are not limited to, any plans to:

(1)       eliminate duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

(2)       filter data based on file type, date ranges, sender, receiver, custodian, search terms, or other similar parameters; and

(3)       use keyword searching, mathematical or thesaurus-based topic or concept clustering, or other advanced culling technologies.

## Principle 2.06 (Production Format)

(a)       At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form). If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

(b)       The parties should confer on whether ESI stored in a database or a database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting counsel or party.

Attachment C

(c)     ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(d)     Generally, the requesting party is responsible for the incremental cost of creating its copy of requested information.  Counsel or the parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

*Education Provisions*

**Principle 3.01 (Judicial Expectations of Counsel)**

Because discovery of ESI is being sought more frequently in civil litigation and the production and review of ESI can involve greater expense than discovery of paper documents, it is in the interest of justice that all judges, counsel and parties to litigation become familiar with the fundamentals of discovery of ESI.  It is expected by the judges adopting these Principles that all counsel will have done the following in connection with each litigation matter in which they file an appearance:

(1)     Familiarize themselves with the electronic discovery provisions of Federal Rules of Civil Procedure, including Rules 26, 33, 34, 37, and 45, as well as any applicable State Rules of Procedure;

(2)     Familiarize themselves with the Advisory Committee Report on the 2006 Amendments to the Federal Rules of Civil Procedure, available at http://www.uscourts.gov/rules/EDiscovery_w_Notes.pdf; and

(3)     Familiarize themselves with these Principles.

**Principle 3.02 (Duty of Continuing Education)**

Judges, attorneys and parties to litigation should continue to educate themselves on electronic discovery by consulting applicable case law, pertinent statutes, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, The Sedona Conference® publications relating to

Attachment C

electronic discovery[1], additional materials available on web sites of the courts[2], and of other organizations [3] providing educational information regarding the discovery of ESI.[4]

ENTER:

Dated: _____        _____

                                      Hon. Rudolph T. Randa
                                      U.S. District Judge

---

[1] http://www.thesedonaconference.org/content/miscFiles/publications_html?grp=wgs110

[2] E.g. http://www.ilnd.uscourts.gov/home/

[3] E.g. http://www.7thcircuitbar.org, www.fjc.gov (under Educational Programs and Materials)

[4] E.g. http://www.du.edu/legalinstitute

Attachment C