UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

SCOTT BOSTWICK,

                       Plaintiff,

              v.

WATERTOWN UNIFIED SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE WATERTOWN UNIFIED SCHOOL
DISTRICT, KATE LAPIN,
CASSANDRA SCHUG, IVAN
THOMPSON, DOUGLAS KEISER,
ROBERT BAXTER and PAUL VANCE,

                    Defendants.

Case No. 2:13-cv-01036

---

## SECOND AMENDED COMPLAINT

---

       Scott Bostwick ("Bostwick"), by his attorneys Reinhart Boerner Van Deuren s.c.,

as and for its Second Amended Complaint in this action against defendants Watertown

Unified School District ("the District"), the Board of Education of Watertown Unified

School District "the Board"),  Kate Lapin ("Lapin"), Cassandra Schug ("Schug"), Ivan

Thompson ("Thompson"), Douglas Keiser ("Keiser"), Robert Baxter ("Baxter") and Paul

Vance ("Vance")  alleges as follows.

## PARTIES

1.      Bostwick is a Wisconsin resident, residing at 200 East Lexington Avenue, Whitefish Bay, Wisconsin 53217.

2.      The District is a Wisconsin school district administering public primary schools in and around Watertown with its principal offices located at 111 Dodge Street, Watertown, Wisconsin 53094.

3.      The Board is a legal entity comprised of members who direct the activities of the District with its principal offices located at 111 Dodge Street, Watertown, Wisconsin 53094.

5.      Lapin was at times relevant to this Complaint the President of the Board, and as an individual is a resident of the State of Wisconsin residing at 212 Margaret Street  Watertown, WI 53094.

6.      Schug was at time relevant to this Complaint the Superintendent of the District, and as an individual is a resident of the State of Wisconsin, whose home address is presently unknown.

7.      Thompson was at time relevant to this Complaint the Superintendent of the District, and as an individual is a resident of the State of Wisconsin, whose home address is presently unknown.

8.      Keiser is a resident of the State of Wisconsin, residing at 1137 Bayberry Drive, Watertown, WI 53098.

9.      Baxter is a resident of the State of Wisconsin, residing at W340 N4963 Township Road O, Nashotah, WI 53028.

10.     Vance is a resident of the State of Wisconsin, residing at 2039 North 84th Street, Wauwatosa, WI 53266.

## JURISDICTION AND VENUE

11.     The Court has original jurisdiction to hear claims stated herein pursuant to 28 U.S.C. §1331 involving federal statutes, and it has subject matter jurisdiction over state law claims pursuant to 28 U.S.C. §1331.

12.     Venue is in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. §1331 because defendants reside in or are located in this district.

## SUMMARY OF THE CASE

13.     This case involves nine-month campaign of harassment, intimidation and character assassination, designed to bully Bostwick into giving up his rights and allowing those who treated him unfairly to escape scrutiny.  A plan was formed to use the threat of a manufactured "investigation" into Bostwick's employment history to get him to quit the job he held as Principal of Watertown High School for a decade.  When Bostwick objected and indicated he was prepared to defend himself against any charges, the plan changed.  At that point, the decision was made to prevent Bostwick from defending himself by:  (a) refusing for several months to even tell him what he was accused of having done, and (b) widening the scope of the investigation in order to come up with a laundry list of so many vague, confusing and unsupported charges that he would not be able to answer them all.  However, when Bostwick continued defending himself and exposing the obvious wrongdoing associated with "witch hunt" against him, the

defendants engaged in concerted efforts to cover their tracks and justify their own behavior. This included disregarding and manipulating procedures to prevent Bostwick from receiving fair treatment, manufacturing evidence against him and ultimately using arbitrary and capricious grounds for terminating him. The result was the destruction of a career and reputation Bostwick built over a lifetime.

## FACTS

### Bostwick's Employment History Prior to Schug's Hire as Superintendent

14.     Bostwick was the Principal of Watertown High School from May 2002 until late September 2012.

15.     The District hired Bostwick to be the Principal of its High School in May 2002. At the time, the High School was suffering from some problems including poor attendance numbers, a lack of accountability on the part of staff, and a general absence of control. The previous Principal of the High School was Thompson.

16.     Bostwick was hired to help fix the problems that existed at the High School and for a decade that is what did. He performed his duties very well and received good evaluations and glowing letters of recommendation from multiple senior administrators.

17.     The District renewed Bostwick's employment contract five times, the most recent one engaged him for a two year period covering the 2011-12 and 2012-13 school years ("Employment Contract").

18.     According to the Employment Contract, Bostwick may not be terminated during its term for reasons that are either "arbitrary or capricious." Further, prior to any termination, Bostwick "shall be entitled to procedural due process."

19.     In addition, upon expiration of the Employment Agreement, Bostwick is entitled to continued employment unless he is "non-renewed" pursuant to and in compliance with Wis. Stat. Sec. 118.24 which requires notice and an opportunity to challenge any such action in a hearing before the District's Board of Education ("the Board").

20.     During most of Bostwick's tenure with the District, Keiser was its Superintendent and Bostwick's immediate supervisor.  Schug became the District's new Superintendent for the 2011-12 school year.

21.     Just prior to Schug's hire, Bostwick reviewed his employee file.  There were no disciplinary documents, warnings or reprimands anywhere in the file.  In fact, despite being a Principal for nearly a decade by then, dealing with countless people on a daily basis, making decisions that would invariably make some people happy and others unhappy, there was not a single complaint against him in the file.  No complaints from fellow administrators or other administrative staff.  No complaints from teachers.  No complaints from students or parents.  No complaints from anyone in his file.  On information and belief, few others in the District with as long a tenure could say the same.

22.     Given Bostwick's exemplary employment record and desire to enhance his career opportunities, during last several years Bostwick pursued his Superintendent's license.  He took the required course work and Keiser acted as his sponsor.

<u>Threats to "Investigate" Bostwick Unless He Quit</u>

23.     Early in Schug's tenure as Superintendent, Bostwick heard rumors that she had plans to replace him and two other high profile senior administrators.  Rather than make any unwarranted assumptions, Bostwick approached Schug about the matter and she assured him that she had no desire to replace him.  Bostwick relied on that representation, ultimately to his detriment.

24.     For various reasons, however, Bostwick began to doubt the sincerity of Schug's assurances.  Therefore, for purposes of his own career planning, Bostwick requested a meeting to find out where he stood regarding retirement and benefit options.

25.     On February 17, 2012, Bostwick attended that meeting with Schug and Thompson.  Thompson had recently been named the District's Human Resources Director and had begun his duties around the same time as Schug was hired.  Thompson had no meaningful background, education or training in human resources matters, let alone any experience in managing those functions for an entity like the District.

26.     Soon after the meeting began, Schug and Thompson advised Bostwick that they were investigating him for misconduct; namely, age and sex discrimination against older female staff members.  Notwithstanding his Employment Contract, Schug and Thompson presented Bostwick with a retirement agreement and threatened him by indicating that if he did not sign it they would keep investigating him and it would likely result in his termination.

27.     Bostwick denied engaging in any misconduct.  Although Thompson told Bostwick it looked like he was guilty of the charges, he and Schug refused to tell him

what he was accused of doing. Bostwick later learned that a secret investigation against him had begun late in 2011.

28. On information and belief, Thompson consulted with defendant Baxter early in the Investigation. Baxter was aware that any such consultation would be improper and a breach of confidentiality as he was not a District employee and not privileged to know details of the investigation.

29. For several months, Schug and Thompson continued refusing Bostwick's requests for information regarding the allegations against him. During that time, they tried again to get Bostwick to resign and he declined. For example, at a meeting on March 23, 2012, Schug and Thompson tried to get Bostwick to sign an "irrevocable written notice of early retirement" by no later than April 1, 2012. Among other things, they proposed "[i]f you voluntarily retire from the district, further investigation into the allegations against you would cease immediately upon receipt of the retirement letter. Your personnel file would reflect that you voluntarily retired from the district." However, Schug and Thompson still refused to provide any information about what the so-called "allegations" were.

Attempts to Coerce Bostwick Into Quitting by Expanding the "Investigation"

29. On information and belief, Schug and Thompson personally, and for reasons related to their own self-interest, wanted to coerce Bostwick into retiring or resigning. When Bostwick opposed these efforts, denied engaging in any wrongdoing and asked to know the substance of the "age/sex" discrimination claims, Schug and Thompson knew or believed that he would be able to successfully defend himself against

them, thereby revealing the improper nature of their investigation and conduct to date. Notably, those original allegations of age/sex discrimination were all ultimately determined to be meritless. Had Bostwick been given the chance to prove that back in February or March 2012, it is unlikely Schug and Thompson would have been forced to stop investigating him.

30.     Therefore, in order to protect their own reputations and positions, Schug and Thompson intentionally prevented Bostwick from answering the age/sex discrimination charges, and from knowing anything about the allegations against him for several months.

31.     In the meantime, Schug and Thompson, together and with the possible assistance of others, chose to expand the investigation and in order to find any possible basis to justify their actions. Toward that end, Thompson interviewed literally dozens of District staff and then later went back through his notes of interviews (most of which were several months old), and picked out 42 things which Bostwick had allegedly done wrong over the prior 10 years.

32.     The District did not give Bostwick written notice of any of the things it was investigating about until June 12, 2012. At that time, Schug and Thompson gave Bostwick a 27 page document entitled "Findings of Fact & Conclusions" ("the Findings") detailing the 42 items referenced above. Schug and Thompson also placed Bostwick on administrative leave and banned him from District property (including access to his own office and personal effects). Schug and Thompson also forbade Bostwick from having any contact with the Board or its members until they decided they were done

investigating him and could bring the issue of Bostwick's future employment before the Board on their terms -- presumably at a hearing where they would recommend his termination. Prior to June 12, 2012, Bostwick was fully performing his duties as Principal. However, as of that date and thereafter, Bostwick was not allowed to perform any services growing out of or incidental to his employment, or any activity that would be reasonably required by the terms of his contract. Notably, Schug and Thompson were aware at the time that Bostwick's mother was dying and indeed she died within the week.

33. Prior to his effective suspension on June 12, 2012, Thompson and Schug, with the assistance of the District and the Board, subjected Bostwick to harassment and knowingly caused the reputation he had built up over an entire career to be destroyed. Among other things, it was well known over the entire second half of the 2011-12 school year that Bostwick was being investigated. In fact, Bostwick heard rumors and/or speculation even from sources outside the District, in other school districts, that he had engaged in immoral or illegal activities. Nevertheless, Bostwick conducted himself professionally during this entire period, continuing to perform his duties without complaint and even continuing to attend school-related events outside of normal work hours.

34. An "investigation" of the kind Schug and Thompson conducted of Bostwick is unprecedented in District history. On information and belief, the District has never conducted any investigation that lasted as long as several weeks or involved more than a handful of issues. On information and belief, Lapin and the Board, including its individual members, supported Schug and Thompson in their manipulation of the

investigation process to deprive Bostwick from the opportunity to meaningfully defend himself, both before and after his suspension on June 12, 2013.

35.     The 42 issues were never registered as formal complaints, and most of them were never even brought to Bostwick's attention before, or to the attention of anyone in administration or human resources, as issues or concerns.  In fact, the teachers are represented by a union and none of the items were ever the subject of a formal complaint, let alone a grievance.  Moreover, 32 of the 42 issues had nothing to do with alleged age or sex discrimination which Schug and Thompson had claimed was the justification for "investigating" him.

Continuation of The "Investigation" Though the Summer of 2012 - Attempts to Use
Unreliable or False Information to Justify Recommending Bostwick's Termination
Despite Lack of Evidence That He Had Done Anything Warranting Dismissal

36.     Schug and Thompson continued revising their Findings against Bostwick months after presenting them on June 12, 2012, conducting more interviews and adding allegations.  Eventually, over the following months, the District produced a total of four drafts of the Findings, increasing in size from 27 pages to 35 pages to 42 pages to 51 pages.

37.     For months during the summer of 2012, Bostwick tried respond to the charges against him.  Among other things, Bostwick met Schug and Thompson for more than 10 hours over several days.  The tape recordings of these meetings provide substantial evidence of Bostwick's innocence, the lack of credibility in the allegations, the deeply flawed and unreliable nature of the investigation.  Notably, Bostwick was not required to participate in these meetings.  Rather, the District agreed to meet with him to

get his side of the story in person only multiple requests by Bostwick. Prior to that time, the District indicated that it was going to proceed with a final Investigation report without his personal input.

38.     The tapes also reveal that Schug and Thompson did not even understand many of the 42 charges they were forcing Bostwick to answer, and were most interested in finding new evidence to support the charges after Bostwick had successfully impeached dozens of them.

39.     Therefore, as Bostwick provided responses to charges, Schug and Thompson went about re-interviewing witnesses, interviewing new witnesses, amending and modifying the 42 charges and adding new allegations Bostwick to which Bostwick was expected to respond. On information and belief, this was part of a course of conduct that began with the meeting in February 2012, designed to subject Bostwick to emotional distress in order to get him to resign or retire forcibly retire. It also included unwanted and harassing contacts of Bostwick and his family by District representatives during the period of his suspension.

40.     Nevertheless, the District produced its last version of the Findings on August 23, 2012, along with Schug's recommendation that the Board fire Bostwick. The Board scheduled a hearing to address this request for September 25-26, 2012.

### Role of Baxter and Keiser in the Investigation

41.     On information and belief, a key element of the plan to create a justification for terminating Bostwick, depended on the participation and support of Baxter and Keiser.

42.     As noted, Keiser was Superintendent during most of Bostwick's tenure. During that period, Keiser never indicated dissatisfaction with Bostwick's performance, let alone suggested that his future employment might be in jeopardy.  In fact, as noted, Keiser formally sponsored and mentored Bostwick in his pursuit of a Superintendent's license.

43.     For a period of approximately two years ending in 2010, defendant Baxter served as the District's Director of Human Resources.  Baxter likewise never indicated any dissatisfaction with Bostwick's performance, let alone suggested that his future employment might be in jeopardy.

44.     The District has procedures for pursuing complaints against supervisors and co-workers.  In addition, teachers in the District are represented by a union and are empowered to pursue grievances on behalf of its members for any alleged mistreatment. As note, during the tenures of defendants Keiser and Baxter, no employees filed such complaints or grievances against Bostwick.  Moreover, Bostwick cannot recall any instance in which defendants Keiser or defendant Baxter addressed with him any employee issue or concern which he failed to resolve to their satisfaction.

45.     Bostwick never received any form of corrective action during the entire time he worked with defendants Keiser and Baxter.  In only one instance did defendants Keiser and Baxter raise the possibility of corrective action with Bostwick.  In that case, not only did Bostwick receive no discipline, defendants Keiser and Baxter also agreed that any documentation regarding the matter would be permanently removed from his personnel file.

46.     On information and belief, part of the reason for the decision by Keiser and Baxter not discipline Bostwick regarding this one instance was due to the fact that Bostwick learned Baxter had leaked information about the matter to one or more third parties (union leadership) before even raising the issue with Bostwick. This was a serious breach of confidentiality, particularly for a Director of Human Resources. After Bostwick asked to address his concerns about this action with the District's Board of Education ("the Board"), defendants Keiser and Baxter dropped the matter. While defendant Baxter later apologized, Bostwick candidly told Baxter he would have a difficult time trusting him in the future.

47.     Notably, Keiser and Baxter have both written Bostwick glowing letters of recommendation, vouching for his professionalism, judgment and dealings with staff. Given that fact, as well as the absence of any documented grievances or complaints against Bostwick during their tenures, defendants have been aware that the entire premise of the investigation and its findings (i.e., that Bostwick had a 10 year record of staff related improprieties and misconduct) was suspect.

48.     On information and belief, during the investigation, Keiser and Baxter provided a false and misleading account of Bostwick's employment record, upon which the defendants purported to rely relied and used to justify accepting the premise of, as well as the credibility of many of the charges within, the 42 items in the findings. On information and belief, Keiser and Baxter did so because they were aware of the desire to remove Bostwick from his position and wished to avoid scrutiny of their own actions during the time that they supervised him. Rather than face criticism that they knew or

should have known that Bostwick was engaged in rampant misconduct for years, they assisted in creating a false narrative of his employment record and one that would fit with the barrage of unsupported charges he was facing.

49. Among other things, defendants Keiser and Baxter falsely denied (a) that they had agreed to permanently remove from Bostwick's personnel file any documentation regarding the issue described in paragraph 45 above, (b) or that Baxter had breached confidentiality regarding the matter.

The Sham "Independent Third-Party" Investigation of Bostwick's Harassment Complaint

50. Prior to receiving the first copy of the Findings in June 2012, Bostwick sent a letter directly to the Board, through its President Kate Lapin ("Lapin"), detailing the harassment he was suffering at the hands of Schug and Thompson in connection with the investigation, including age discrimination. Bostwick later learned that Lapin had not actually read the letter, but instead directed it to Schug and Thompson to address. On information and belief, Lapin was acting with the support of the Board and its individual members.

51. On June 14, 2012, Bostwick followed up with another letter directed to the Board which he identified this time as a "formal complaint" of harassment. Bostwick was asserting that he was being harassed on the basis of his age by attempts to force him into retirement. Lapin and the Board, including its individual members, had an obligation pursuant to Board Policy #4110.1 to investigate this age discrimination complaint promptly. If Bostwick was not satisfied with Lapin's response, he was entitled to a formal due process hearing before the Board within 30 days.

52.     Bostwick was not granted a hearing within thirty days.  If he had been, Bostwick would have had the opportunity to present his case to the Board long before the investigation against him was finished in August and months before he was facing a hearing regarding his termination in late September.  Lapin and the Board, including its individual members, attempted to bury the complaint, taking no action on it whatsoever for a lengthy period.  Lapin waited until sometime after July 17, 2012 and then engaged defendant Vance to conduct an untimely "third-party" investigation into Bostwick's claims.  On information and belief, Vance was directed to find against Bostwick and to support the actions of Schug and Thompson.  On information and belief, Lapin and the Board, including its individual members, coordinated and conspired with defendant Baxter to select Vance and to have him reach a pre-determined conclusion.

53.     Defendant Vance did not conduct a meaningful third-party investigation.  On information and belief, for approximately a month into his "investigation" Vance did nothing but communicate with accused parties -- Schug and Thompson -- and made no attempt to communicate with Bostwick.

54.     After multiple attempts, defendant Vance agreed to communicate with Bostwick.  Vance represented to Bostwick that he was conducting a thorough, good faith and independent investigation of his harassment complaint and Bostwick relied on such representations in cooperating with him.  Vance also promised to keep Bostwick apprised of the status of his investigation.  Given that Vance promised to act independently, Bostwick chose to forego at that time filing a formal charge of discrimination with state and federal agencies.  Presumably, Vance would be fulfilling a similar role as a

Wisconsin Equal Rights Division or Equal Employment Opportunity investigator in terms of neutrality and a desire to fully examine his charge.

55. Defendant Vance communicated with Bostwick only once. Bostwick attempted to provide additional information to Vance in connection with his investigation in order to support his allegations of harassment. However, Vance ignored multiple attempts by Bostwick to communicate in the first half of September 2012. After promising that he would be willing to consider additional evidence Bostwick wished to provide, Vance simply stopped communicating with Bostwick's counsel. This included e-mails Vance on:

- September 5, 2012 (". . . I look forward to hearing from you);

- September 6, 2012 ("I wanted to check your status. Have you spoken to Jim Martin yet? When will you be free to talk with (and hopefully meet with) me again?

- September 7, 2012 ("Can you please give me an update?")

- September 11, 2012 (Mr. Vance, I still have not received any response from you despite leaving multiple messages. Please contact me no later than tomorrow morning.)

During this time, Vance led Bostwick to believe that his investigation was ongoing and that he would not complete it without further communicating with Bostwick.

56. However, while Bostwick was attempting to communicate with him, defendant Vance was secretly conspiring with Lapin, the Board and its individual members, to meet with the Board in closed session, without notice to Bostwick, to

present his findings and conclusions.   This meeting took place on or about September 12, 2012.  Vance purported to have concluded that the investigation against Bostwick was completely justified, was proper conducted and that Schug and Thompson had not harassed him in any way. Therefore, Vance recommended that Boswtick's complaint be dismissed and the Board adopted his recommendation.  In reliance on the notion that Vance would not complete his investigation and arrange to secretly meet with the Board without his presence, Bostwick did not demand that the Board allow him to appear -- something he had a right to do under Board Policy #4110.1.  While it is uncertain whether the Board would have consented to Bostwick's appearance, it came and went without his knowledge and Vance assisted in that deprivation of his rights.

57.     Defendant Vance did not simply find that Schug and Thompson acted appropriately toward Bostwick.  Vance also purported to find that the 42 alleged "complaints" as outlined in the investigation by Schug and Thompson, or some of them, were meritorious and credible.  In doing so, he repeated and published statements that Bostwick contends are false and defamatory.

58.     On information and belief, Schug, Thompson, Lapin, the Board and it is individual members, conspired and arranged for Vance to report his "findings" in a closed door session on September 12, 2012 in order to affect and manipulate the results of Bostwick's termination hearing less than two weeks later.  Bostwick was given no notice of the September 12, 2012 session, or opportunity to defend himself.  Therefore, once the Board already ruled on September 12, 2012 that the investigation against Bostwick was

appropriate and justified, there was effectively nothing left to decide at the termination hearing.

Bostwick's Termination and the Damage to His Reputation and Future Prospects

59.    The Board conducted a hearing on Schug's recommendation to fire Bostwick on September 25-26, 2012.  The District failed to provide Bostwick due process at the hearing by, among other things refusing to provide him with notice of which of the 42 charges he would need to defend himself against, or sufficient time to present a defense.  Lapin and the Board, including its individual members, along with the assistance of Schug and Thompson, conspired to deprive Bostwick of his due process.

60.    The Board voted to terminate Bostwick and issued a determination which purported to justify its decision dated October 11, 2012.  The Board found Bostwick guilty of only 10 of the 42 charges against him.  Again, he had no prior notice that these were the issues that would be the focus of the recommendation to terminate him.

61.    The arbitrary and capricious nature of Bostwick's termination is evident for many reasons.  This includes (a) the arbitrary and random selection of less than 25% of the charges against him as bases for his termination, (b) the lack of support for District's findings regarding those 10 items, (c) the absence of any precedent for other District employees being disciplined, let alone terminated for any offenses similar to the 10 at issue, and (d) the failure to provide Bostwick any prior warning or opportunity to correct his behavior, again contrary the District's normal policies and procedures.

62.    By virtue of the defendants' actions, Bostwick has not only been deprived of employment, including ongoing compensation and benefits, but has also suffered

severe damages to his reputation and ability to obtain alternative employment. In

essence, Bostwick's career has been destroyed by the actions of those listed above.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
BREACH OF CONTRACT
(Defendant the District)

63.    Plaintiff realleges and incorporates paragraphs 1-62 of this Complaint as if

fully set forth herein.

64.    The Employment Contract is an enforceable contract between the parties.

65.    The District breached the Employment Contract by actions including

termination of his employment for arbitrary and capricious reasons, and failure to provide

plaintiff due process.

66.    As a result of the District's breach of contract, plaintiff has suffered

damages in an amount to be determined, and is further entitled to reinstatement.

SECOND CLAIM FOR RELIEF
TORTIOUS INTERFERENCE WITH CONTRACT
(All Defendants Besides the District)

67.    Plaintiff realleges and incorporates paragraphs 1-66 of this Complaint as if

fully set forth herein.

68.    The defendants other than the District were aware of Bostwick's

Employment Contract and his expectation of continued employment with the District.

With full knowledge of same, defendants intentionally interfered with Bostwick's

contractual rights, so as to cause or attempt to cause third parties not to honor their

obligations to plaintiff, or otherwise deter those parties from doing future business with plaintiff.

69.     The actions of defendants were neither justified nor privileged.

70.     All of the individuals named above in their individual capacities acted maliciously, willfully and intentionally.

71.     The actions of defendants were malicious and done with an intentional disregard of plaintiff's rights, entitling plaintiff to punitive damages.

72.     As a result of defendant's actions, plaintiff has suffered damages in an amount to be determined at trial.

THIRD CLAIM FOR RELIEF
CONSPIRACY – COMMON LAW AND WIS. STAT. §134.01
(All Defendants)

73.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72 above.

74.     Through the conduct described above, defendants have combined together and/or with others to benefit themselves at plaintiff's expense and thus have acted together to carry out an unlawful purpose, or have accomplished a lawful purpose by unlawful means.  In particular, defendants conspired to interfere with his employment, in addition to depriving him of due process and the opportunity to defend himself and his reputation.

75.     Such purpose was designed to cause willful and malicious injury to plaintiff.

76.   All of the individuals named above in their individual capacities acted maliciously, willfully and intentionally.

77.   As a result of defendants' actions, plaintiff has suffered damages in an amount to be determined at trial.

FOURTH CLAIM FOR RELIEF
SLANDER / LIBEL
(All Defendants)

78.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-77 above.

79.   Defendants provided, endorsed, and published republished information in connection with the investigation regarding Bostwick which they knew were untrue or with reasonable diligence would have known such information was untrue.  This included false and unsupported claims in four different versions of the Findings and Conclusions of Thompson and Schug, as well as the Findings, Conclusion and Order of the Board.  It also included the actions of Keiser, Baxter and Vance as described above.

80.   Defendants provided this information to individuals with malice and with intent to injure Bostwick's reputation and employment prospects, or with reckless disregard or such effect.

81.   Defendants' statements were not privileged or otherwise protected.

82.   All of the individuals named above in their individual capacities acted maliciously, willfully and intentionally.

83.     As a result of defendants' actions, Bostwick has been injured in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY
(Against Defendant Vance)

84.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-83 above.

85.     As a result of the relationship of trust inherent in the nature of Vance's investigation into Bostwick's harassment complaint, as well as Vance's representations that he would conduct his investigation in a fair and unbiased manner, Vance owed plaintiff a fiduciary duty to plaintiff.

86.     Defendant Vance breached his fiduciary duty to plaintiff by conducting a biased, unfair and predetermined investigation, and by preventing plaintiff from meaningfully pursuing his complaint and protecting his rights.  Bostwick changed his position in reliance on Vance's representations.

87.     Defendant Vance's actions were malicious, willful and intentional.

88.     As a result of defendant Vance's actions plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL AND NEGLIGENT MISREPRESENTATION
(Against Defendant Vance)

89.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-90 above.

91.     Defendant Vance represented to plaintiff that he would conduct an unbiased and fair investigation that was not predetermined, and would thoroughly investigate Bostwick's allegations.

92.     Defendant Vance's representations were false and, when made, were either known to be false or made without regard to whether they were true or false.

93.     Plaintiff reasonably relied on the representations described above to its detriment.

94.     Defendant Vance's false representations were malicious and made with an intentional disregard of plaintiff's rights, entitling plaintiff to punitive damages.

95.     As a result of defendants' actions, plaintiff has suffered damages in an amount to be determined at trial.

SEVENTH CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(All Defendants)

96.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-95 above.

97.     Defendant engaged in actions over a nine month period designed to cause plaintiff emotional distress.

98.     Defendants actions caused plaintiff emotional distress and plaintiff suffered an extreme and disabling response to the conduct.

99.     All of the individuals named above in their individual capacities acted maliciously, willfully and intentionally.

100.    As a result of defendants' intentional infliction of emotional distress, plaintiff suffered damages in an amount to be determined at trial.

EIGHTH CLAIM FOR RELIEF
42 U.S.C. § 1983 FOR
VIOLATION OF PROCEDURAL DUE PROCESS
(Against Defendants Schug, Thompson and Lapin)

101.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-100 above.

102.    Under the Fourteenth Amendment to the U.S. Constitution, a state actor may not deprive a person of any property interest without due process of law.  Any state actor who violates this Fourteenth Amendment right under color of state law is liable under 42 U.S.C. § 1983.

103.    Because Bostwick had a property interest in his continued employment, he was entitled to procedural due process before Defendants deprived him of that interest.

104.    Pursuant to Board Policy #4110.1, Bostwick had a property interest in receiving both (a) a prompt and proper investigation of his June 2012 age discrimination and harassment complaint and (b) a Board hearing regarding such complaint conducted in a manner that provided due process to all participants.  Bostwick was thus entitled to procedural due process before Defendants deprived him of this interest.

105.    While acting individually and in a supervisory capacity as decision makers for the District and while operating under color of state law, Defendants Schug, Thompson, and Lapin failed to provide Bostwick with adequate procedural protection before depriving Boswtick of his property interests in (a) continued employment and (b)

the prompt and proper investigation and Board review of his harassment and age discrimination claims against Schug and Thompson.

106.    Specifically, Defendants Schug, Thompson, and Lapin structured the September 25-26, 2012 Board hearing to effectively strip Bostwick of any meaningful ability to defend himself against the myriad charges leveled against him.  Schug, Thompson, and Lapin refused to notify Bostwick prior to the Board hearing about which of the 42 alleged charges Bostwick would need to defend himself against.  Schug, Thompson, and Lapin likewise denied Bostwick sufficient time or opportunity to address and rebut such charges at the Board hearing.

107.    Defendant Lapin likewise failed to timely investigate Bostwick's formal complaints to her, as Board President, of harassment and age discrimination at the hands of Schug and Thompson.  Lapin and the Board had an obligation pursuant to Board Policy #4110.1 to investigate this complaint promptly (i.e., within five working days). Lapin denied Bostwick such procedural due process.

108.    Defendant Lapin also failed to grant Bostwick a Board hearing regarding his formal complaints of harassment and age discrimination.  Per Board Policy #4110.1, such a hearing was required to be held within 30 days of receipt of Bostwick's June 14, 2012 formal complaint and conducted in a matter that provided due process to all participants.  Lapin did not provide Bostwick with such a Board hearing.  As such, Lapin denied Bostwick the opportunity to inform the Board of the meritless and malicious nature of the charges against him by mid-July 2012.  Lapin's failure in this regard robbed

Bostwick of his right to frame the issues before the Board and articulate why Schug and Thompson's investigation against him was improper.

109. Instead, Lapin waited until sometime after July 17, 2012 and then engaged Defendant Vance to conduct an untimely "third-party" investigation into Bostwick's complaint. Vance represented to Bostwick that he was conducting a thorough, good-faith investigation of Bostwick's complaint. But when Bostwick made multiple attempts to contact Vance in the first half of September 2012 to provide additional information regarding his complaint, Vance ignored him. Bostwick later learned that Vance had already secretly completed his investigation and held a closed door meeting with Board on September 12, 2012. At this undisclosed meeting, Vance informed the Board that Bostwick's complaint lack merit because the investigation was justified and properly conducted. Vance further informed the Board that the 42 complaints against Bostwick set forth in Schug and Thompson's investigation were meritorious and credible. That same day, Lapin and the Board ruled that the investigation against Bostwick was appropriate and justified. This September 12, 2012 meeting – of which Bostwick received no notice or opportunity to defend himself – occurred less than two weeks before the Board's hearing on Schug's recommendation to fire Bostwick and rendered Bostwick's termination a fait accompli.

110. The failures and actions specified above constitute violations of the Fourteenth Amendment for which Defendants Schug, Thompson, and Lapin are liable under 42 U.S.C. § 1983.

111.    Defendants Schug, Thompson, and Lapin knew or reasonably should have known that these failures to provide Bostwick with adequate procedural protection were violative of constitutional rights.

112.    As a direct and proximate result of these violations by Defendants Schug, Thompson, and Lapin, Bostwick has suffered damages in an amount to be proven at trial. Under § 1983, Bostwick is entitled to recover all such general and special damages, attorneys' fees, and costs.  Because Defendants Schug, Thompson, and Lapin acted with reckless or callous indifference to Bostwick's constitutional rights, Defendants Schug, Thompson, and Lapin are also liable for punitive damages in an amount to be determined at trial.

NINTH CLAIM FOR RELIEF
CAUSE OF ACTION: 42 U.S.C. § 1983 FOR
VIOLATION OF EQUAL PROTECTION
(Against Defendants Schug and Thompson)

113.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-112 above.

114.    Under the Fourteenth Amendment to the U.S. Constitution, no State may deny to any person within its jurisdiction the equal protection of the laws.  Any state actor who violates this Fourteenth Amendment right under color of state law is liable under 42 U.S.C. § 1983.

115.    Equal protection may be invoked under the Fourteenth Amendment where an individual is subject to disparate treatment by a state actor based upon sheer

vindictiveness, maliciousness, animosity or spite and for reasons unrelated to any legitimate state interest.

116.    While acting individually and in a supervisory capacity as decision makers for the District and while operating under color of state law, Defendants Schug and Thompson masterminded a nine-month campaign of harassment, intimidation, and character assassination with the operative goal of coercing Bostwick into giving up his right to continued employment as Principal of Watertown High School.  Defendants engaged in such vindictive conduct to safeguard their own reputations and positions after Bostwick refused to resign and accept early retirement.

117.    Schug and Thompson's disparate treatment and "singling out" of Bostwick pursuant to an orchestrated campaign of harassment was intentional, malicious, and devoid of legitimate state interest.

118.    The actions delineated above constitute violations of the Fourteenth Amendment for which Schug and Thompson are liable under 42 U.S.C. § 1983.

119.    Defendants Schug and Thompson knew or reasonably should have known that such vindictive disparate treatment of Bostwick for reasons unrelated to any legitimate state objective was violative of constitutional rights.

120.    As a direct and proximate result of these violations by Defendants Schug and Thompson, Bostwick has suffered damages in an amount to be proven at trial.  Under § 1983, Bostwick is entitled to recover all such general and special damages, attorneys' fees, and costs.  Because Defendants Schug and Thompson acted with reckless or callous

indifference to Bostwick's constitutional rights, Defendants Schug and Thompson are also liable for punitive damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### CAUSE OF ACTION: AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF 29 U.S.C. §623

121.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-120 above.

122.    At all times relevant, plaintiff was over the age of 40 and defendants were aware of that fact.

123.    Plaintiff was well qualified for his position and met all reasonable expectations for continued employment.

124.    Plaintiff was targeted for removal as Principal based on his age and harassed in an effort to get him to quit.

125.    Plaintiff was further retaliated against when he complained about unfair treatment based on his age.  This included continuing the improper investigation against him, improperly suspending him and ultimately improperly terminating him.

126.    On information and belief, defendants intended to replace person with a person under the age of 40.  Defendants' actions were part of a pattern and/or practice of discrimination on the basis of age and plaintiff was not the only person targeted for improper treatment among similarly situated school administrators.

127.    Defendants' conduct violates the terms of the Age Discrimination in Employment Act pursuant to 29 U.S.C. §623(3)(a) and 29 U.S.C. §623(3)(d).

128.    Plaintiff filed discrimination claims with the EEOC and was issued a right to sue letter on January 27, 2014.

129.    As a result of defendants' unlawful age-related harassment, discrimination and retaliation, plaintiff has suffered damages in an amount to be determined at trial.

130.    Such violations as described above were willful, entitling plaintiff to exemplary damages.

ELEVENTH CLAIM FOR RELIEF
CAUSE OF ACTION: SEX DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

131.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-130 above.

132.    At all times relevant, plaintiff was a male and defendants were aware of that fact.

133.    Plaintiff was well qualified for his position and met all reasonable expectations for continued employment.

134.    Plaintiff was targeted for removal as Principal based on his sex and harassed in an effort to get him to quit.

135.    Plaintiff was improperly investigated, improperly suspended and ultimately improperly terminated.

136.    On information and belief, defendants intended to replace plaintiff with a female.  Defendants' actions were part of a pattern and/or practice of discrimination on the basis of sex and plaintiff was not the only person targeted for improper treatment among similarly situated school administrators.

137. Defendants' conduct constitutes sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

138. As a result of defendants' unlawful sex-related harassment, discrimination and retaliation, plaintiff has suffered damages in an amount to be determined at trial.

139. Such violations as described above were willful, entitling plaintiff to exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Award plaintiff judgment on all of its claims.

B. Award plaintiff damages in an amount to be proven at trial, along with exemplary and punitive damages.

C. Award Bostwick his reasonable expenses, including costs and attorneys' fees in prosecuting this action; and,

D. Award Bostwick such further relief as the Court deems just and proper.

Dated this 21st day of March, 2014.

BY _/s/ David J. Sisson_____
David J. Sisson
WI State Bar ID No. 1017422
Reinhart Boerner Van Deuren, s.c.
1000 North Water Street,
Suite 1700
Milwaukee, WI 53202
414-298-1000
Attorney for Plaintiff Scott Bostwick

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

SCOTT BOSTWICK,

Plaintiff,

v.

WATERTOWN UNIFIED SCHOOL
DISTRICT, BOARD OF EDUCATION OF
THE WATERTOWN UNIFIED SCHOOL
DISTRICT, KATE LAPIN, CASSANDRA
SCHUG, IVAN THOMPSON, DOUGLAS
KEISER, ROBERT BAXTER and PAUL
VANCE

Case No.2:13-cv-01036

Defendants.

---

## CERTIFICATE OF SERVICE

---

I hereby certify that I caused a true and correct copy of Plaintiff's Second Amended Complaint to be filed electronically with the Eastern District of Wisconsin's ECF system on March 21, 2014 which, pursuant to the Federal Rules of Civil Procedure, will send a notice of electronic filing to the following:

Lori Lubinski, Esq.
Axley Brynelson, LLP
2 East Mifflin Street, Suite 200
P.O. Box 1767
Madison, WI 53701-1767
llubinsky@axley.com

Tyler K Wilkinson, Esq.
Axley Brynelson, LLP
2 East Mifflin Street, Suite 200
P.O. Box 1767
Madison, WI 53701-1767
twilkinson@axley.com

Dated this 21st day of March, 2014.

s/ David J. Sisson
David J. Sisson
WI State Bar No. 1017422
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Phone: 414-298-1000
Fax: 414-298-8097
dsisson@reinhartlaw.com

*Attorney for Plaintiff Scott Bostwick*

13472560